2022 UT App 96

# THE UTAH COURT OF APPEALS

DEAN VIERTEL,
Appellant and Cross-appellee,
*v.*
BODY FIRM AEROBICS LLC, VASA TARGET LLC, VASA FITNESS
LLC, SCOTT FELSTED, AND TROY PETERSON,
Appellees and Cross-appellants.

Opinion
No. 20200841-CA
Filed August 4, 2022

Fourth District Court, Provo Department
The Honorable Derek P. Pullan
No. 190401248

Thomas W. Seiler, Jared L. Anderson, Derek T.
Marshall, and Perris E. Nelson, Attorneys for
Appellant and Cross-appellee

Blake T. Ostler, Attorney for Appellees and
Cross-appellants

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGE RYAN M. HARRIS and JUSTICE DIANA HAGEN concurred.[1]

ORME, Judge:

¶1      Dean Viertel challenges the district court's grant of
summary judgment in favor of Body Firm Aerobics, LLC; VASA
Target, LLC; VASA Fitness, LLC; Scott Felsted; and Troy Peterson
(collectively, Appellees). Because Viertel has not challenged each

---

1. Justice Diana Hagen began her work on this case as a judge of
the Utah Court of Appeals. She became a member of the Utah
Supreme Court thereafter and completed her work on this case
sitting by special assignment as authorized by law. *See generally*
Utah R. Jud. Admin. 3-108(4).

independent basis for the district court's ruling on appeal, we affirm.

BACKGROUND[2]

¶2     This case arises from an oral agreement in 1993, and a written agreement in 1998, between Viertel and Felsted regarding Viertel's ownership in Body Firm Aerobics (BFA).[3] Viertel contended that in each agreement, Felsted granted him a significant ownership interest in BFA. Specifically, Viertel argued that in 1998, Felsted "confirmed in writing" and "expressly ratified" the earlier oral agreement that Viertel held a 30% interest in BFA. To substantiate his version of events, Viertel later produced a page from a notepad on which Felsted wrote: "Dean Viertel now owns and has rights to 30% of Body Firm Inc's Stock. Which also entitles him to all of the property, equipment, and privileges." The note was signed by Felsted as "V.P. Body Firm Inc.," and below his signature, he wrote: "this reflects an arrangement made back some 5 plus years ago."

¶3     From 1993 to 2001, Viertel worked for BFA providing marketing services.[4] At some point in 2000, Peterson, who at the

---

2. "In reviewing the court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (quotation simplified).

3. The briefing and record in this case contain extensive factual and procedural histories. But due to the procedural posture of the appeal, we have no need to lay out most of that history, and we present only the history necessary to our analysis on appeal.

4. There is some dispute in the record regarding whether Viertel's employment with BFA ended in 1999 or 2001. This dispute is

(continued…)

time was a director of BFA, orally informed Viertel that he was not a shareholder of the company.

¶4    Nevertheless, even after Viertel's employment with BFA ended, the company continued to make regular payments to Viertel. These payments began in 1998 and ended in 2014. In November 2014, the payments from BFA ceased, but from early 2015 to May 2015, Felsted made payments to Viertel from his personal accounts. After May 2015, all payments to Viertel from BFA or any individual affiliated with the company ceased. One month before Felsted stopped making these payments, he informed Viertel that Viertel had an equity interest in BFA and that BFA would purchase his ownership interest, though for less than what he was expecting. Over the next year, however, Viertel did not receive a purchase offer from BFA.

¶5    In 2018, VASA Target, LLC acquired BFA.[5] In July 2019, Viertel filed suit against BFA, VASA, Felsted, and Peterson asserting five causes of action. First, he sought a court order allowing him to inspect BFA's records. Second, he sought declaratory judgment that he owned a 30% interest in BFA. Third, he alleged common law fraud on the ground that Appellees failed to disclose to him, an owner of BFA, "the existence of the negotiations and indications of interest of [VASA] and other Defendants in the acquisition, if any, of membership interests or assets of [BFA]." Fourth, he asserted that Appellees had breached the implied covenant of good faith and fair dealing in cutting him

immaterial to the issues raised on appeal, and we do not resolve it here.

5. It is unclear from the record whether VASA Target, LLC merged with BFA or acquired it via stock purchase but the distinction is inconsequential in the context of this appeal. Thereafter, VASA Target, LLC turned management of BFA's properties over to VASA Fitness, LLC. For ease of reference, throughout this opinion we simply refer to VASA Target, LLC and VASA Fitness, LLC collectively as VASA.

out of the negotiations with VASA and out of his share of the sale proceeds. Fifth, he alleged breach of fiduciary duty against Felsted and Peterson because they "had an affirmative duty to" him to disclose "material facts" concerning VASA's acquisition of BFA.

¶6   Appellees moved for summary judgment, primarily arguing that shares of BFA were never validly issued to Viertel; that any agreement to issue BFA shares lacked the requisite definiteness; and that, in any event, all Viertel's claims were barred by the applicable statutes of limitations. Additional summary judgment motions followed from both sides, and the court eventually granted summary judgment in favor of Appellees on all Viertel's claims and dismissed Viertel's complaint with prejudice.

¶7   As relevant to our analysis, the court granted summary judgment to Appellees based on the following rationale. It began by granting summary judgment on Viertel's fourth claim for breach of the implied covenant of good faith and fair dealing—or as the district court called it, Viertel's "breach of contract claim"—on two independent bases. First, it determined that "Felsted had neither actual nor apparent authority to grant Viertel shares in BFA" in 1993 or 1998 and that BFA had never ratified any such agreement, and second, it determined that "[e]ven if Scott Felsted had the apparent authority to issue shares to Viertel . . . , the promise to grant a thirty percent interest in [BFA] is not sufficiently definite to be enforced." Piggybacking on this ruling, the court then granted summary judgment on Viertel's first and second claims because "[w]ithout an ownership interest in [BFA], Viertel has no right to inspect the business records . . . and no right to the declaratory judgment he seeks" to confirm his ownership interest. Then, the court granted summary judgment to Appellees on Viertel's breach of fiduciary duty claim on the basis that "Viertel did not plead any other special relationship from which a fiduciary duty might derive other than his ownership interest in BFA" and, given that Viertel had no ownership interest, there was no material dispute of fact on this claim. And finally, regarding

Viertel's fraud claim, the court granted summary judgment to Appellees on the ground that the applicable statute of limitations had run.

¶8     Viertel appeals.

ISSUES AND STANDARDS OF REVIEW

¶9     Viertel raises two issues that warrant our consideration.[6] First, he contends that the district court erred at the summary judgment stage by "impermissibly weighing evidence and/or assessing credibility in determining" that Felsted did not have "actual authority to bind [BFA]." Second, Viertel argues that the court erred in determining that the statute of limitations barred his common law fraud claim. "In reviewing a district court's summary judgment ruling, we review its legal conclusions and ultimate grant or denial of summary judgment for correctness." *Arlington Mgmt. Assocs., Inc. v. Urology Clinic of Utah Valley, LLC*, 2021 UT App 72, ¶ 9, 496 P.3d 719 (quotation simplified).

---

6. Viertel also contends that the district court erred in denying a summary judgment motion and a motion brought pursuant to rule 56(d) of the Utah Rules of Civil Procedure. As discussed below, because Viertel has not attacked each independent basis of the district court's ownership ruling, he cannot overcome the court's adverse ruling on all his claims, and we therefore have no need to consider these other issues.

Additionally, Appellees filed a cross-appeal in which they contend that the district court erred in determining that, aside from Viertel's fraud claim, his other claims were not barred by the applicable statutes of limitations. Because we affirm the court's summary judgment ruling and its ultimate dismissal of Viertel's suit with prejudice, Appellees have received the result they are seeking, and we have no need to address this issue.

ANALYSIS

I.

¶10   Viertel argues that the district court impermissibly weighed evidence and assessed credibility at the summary judgment stage when it determined that Felsted lacked actual authority to bind BFA to the agreement to grant Viertel shares in the company. Although the court did grant summary judgment to Appellees on this basis, it also granted it on the additional independent basis that the agreement between Felsted and Viertel was not sufficiently definite to be enforced. Thus, the court determined that regardless of Felsted's authority, Viertel was not an owner of BFA.[7] Specifically, the court first determined that Viertel's fourth claim for breach of the implied covenant of good faith and fair dealing could not survive summary judgment because the agreement between Viertel and Felsted was not sufficiently definite to be enforced. The court then granted summary judgment on Viertel's claims that he was entitled to inspect BFA's records, to receive declaratory judgment that he owned 30% of BFA, and to a determination that Felsted and Peterson breached a fiduciary duty owed to him. The court's rationale was that because Viertel could not prove that he was an owner of BFA, he likewise could not succeed on these other claims that all hinged on him being an owner of BFA.

¶11   In Viertel's principal brief on appeal, he did not address this independent basis for the entry of summary judgment against him. He did address it in his reply brief, but only after Appellees raised this critical point in their principal brief. This is fatal to Viertel's appeal. "Appellants are not permitted to raise matters for the first time in a reply brief," *Chard v. Chard*, 2019 UT App 209, ¶ 34, 456 P.3d 776, and when they do, "that issue is waived and will typically not be addressed by the appellate court," *State v.*

_____

7. Viertel conceded at oral argument before this court that the district court's sufficiently-definite ruling was an independent alternative ground for the court's summary judgment ruling.

*Johnson*, 2017 UT 76, ¶ 16, 416 P.3d 443. Additionally, "we will not reverse a ruling of the district court that rests on independent alternative grounds where the appellant challenges only one of those grounds." *Kendall v. Olsen*, 2017 UT 38, ¶ 12, 424 P.3d 12 (quotation simplified). Because Viertel has waived any challenge to the district court's sufficiently-definite ruling, we "have no choice but to affirm the district court's" summary judgment ruling regarding Viertel's first, second, fourth, and fifth claims on the basis that Viertel has not carried his burden of persuasion on appeal, "and we do so without endorsing the merits of the district court's [decision]." *See Chard*, 2019 UT App 209, ¶ 35 (quotation simplified).

## II.

¶12    Viertel's remaining claim is for common law fraud. He argues that the district court erred in granting summary judgment on this claim on the ground that it was barred by the applicable statute of limitations. Here, we make no ruling regarding the court's statute of limitations determination and rather affirm on an alternative ground apparent in the record. *See Cochegrus v. Herriman City*, 2020 UT 14, ¶ 36, 462 P.3d 357 ("It is within our discretion to affirm a judgment on an alternative ground if it is apparent in the record.") (quotation simplified).

¶13    Based on the record before us, it is clear that Viertel's fraud claim, like all his other claims, turned on whether he was an owner of BFA. Specifically, Viertel alleged that he was an "owner of 30% of [BFA]," and thus, Felsted and Peterson "had an affirmative duty to disclose to [him] the existence of" VASA's interest in BFA, its negotiations with BFA, and its subsequent acquisition of BFA. But because we have determined, for purposes of this appeal, that Viertel did not establish that he was an owner in the company, there can be no fraud here as a matter of law. Very simply, Felsted and Peterson had no duty to disclose to Viertel, as a non-owner, any negotiations with, interest of, or subsequent acquisition by VASA. Therefore, "there is no genuine dispute as to any material fact," *see* Utah R. Civ. P. 56(a), and the

district court did not err in granting summary judgment on this claim to Appellees.[8]

CONCLUSION

¶14   Viertel has not challenged each independent basis for the district court's ruling regarding his first, second, fourth, and fifth claims against Appellees. Thus, he has not met his burden of persuasion on appeal, and we affirm the district court's ruling regarding these four claims. And due to Viertel forgoing a focused challenge to the district court's ownership ruling, we determine that the court did not err in granting summary judgment to Appellees on his claim for common law fraud because, without Viertel being an owner, no genuine dispute of material fact existed with respect to this fraud claim.

¶15   Affirmed.

_____

8. As part of Viertel's fraud claim set forth in his complaint, there are also some vague references to other ways in which Viertel claims to have been defrauded, such as the conclusory statements that VASA "conspired with the other Defendants to defraud [him]." But this and any other potential claims of fraud were not pleaded with particularity because Viertel did not state how VASA conspired to defraud him or how Appellees otherwise defrauded him. *See* Utah R. Civ. P. 9(c) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). On this ground, we affirm the district court's order regarding any of Viertel's ancillary fraud claims.