**2023 UT App 117**

## THE UTAH COURT OF APPEALS

SAMIR MENESES, ALISSA BLAKE, DANIEL LOWRANCE, AND
RODNEY HILL,
*Appellants,*
*v.*
SALANDER ENTERPRISES LLC,
*Appellee.*

Opinion
No. 20210720-CA
Filed September 28, 2023

Third District Court, Salt Lake Department
The Honorable Kara Pettit
No. 200901992

Daniel M. Baczynski, Attorney for Appellants

Brett B. Larsen and Gregory M. Constantino,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN M. HARRIS concurred.

MORTENSEN, Judge:

¶1     Salander Enterprises LLC (Salander) is in the business of
buying debts and then seeking to recover the amounts owed.
Salander purchased debts owed by Samir Meneses, Alissa Blake,
Daniel Lowrance, and Rodney Hill (collectively, Meneses Parties),
the recovery of which Salander obtained through lawsuits and
wage garnishments. Because Salander had failed to register as a
debt collector as required by Utah statute, the Meneses Parties
filed suit, alleging that Salander had engaged in unconscionable
and deceptive practices in violation of the Utah Consumer Sales
Practices Act (UCSPA). The district court granted summary
judgment in Salander's favor after it determined that Salander
was not required to register as a debt collector. Alternatively, the

court determined that a "violation" of the Utah Collection Agency Act (UCAA), "with nothing more," does not support a cause of action under the UCSPA. We affirm the district court's order on this alternative ground.

## BACKGROUND

¶2      Salander—a Wisconsin limited liability company that does not own, maintain, or operate a physical office in Utah—is in the business of purchasing debts. Salander purchased the debts owed by the Meneses Parties and subsequently filed lawsuits against them to recover the debts. After obtaining judgments against the Meneses Parties, Salander sought to enforce those judgments through wage garnishment proceedings.

¶3      In March 2020, the Meneses Parties sued Salander, alleging that "Salander engaged in a deceptive and unconscionable practice in violation" of the UCSPA. *See* Utah Code §§ 13-11-1 to -23. Specifically, the Meneses Parties argued that Salander had engaged in debt collection "against vulnerable Utah consumers without the mandatory license required" by the UCAA. *See id.* §§ 12-1-1 to -11 (2022).[1] The then-effective statute required registration and bonding of any "collection agency, collection bureau, or collection office" that conducts business in Utah. *See id.* § 12-1-1.

¶4      Salander was not registered or bonded as required by section 12-1-1 when it brought suit or pursued garnishment proceedings against the Meneses Parties. The Meneses Parties did not raise this as a defense in the actions Salander filed against

---

1. With the exception of its final section—authorizing creditors to recover collection fees in addition to other amounts owed by a debtor—the UCAA was recently repealed by the Utah Legislature. *See* Act of May 3, 2023, ch. 32, § 3, 65th Leg., Gen. Sess.; Act of May 3, 2023, ch. 213, § 1, 65th Leg., Gen. Sess.

them, but in the later action now before us, they argued Salander was "a 'collection agency, collection bureau, or collection office' under [s]ection 12-1-1 and was therefore required to register and file a bond pursuant to the UCAA." "[B]ecause Salander was not registered and did not have a bond as described in the UCAA," the Meneses Parties asserted that "Salander lacked standing to file suit against them in a Utah court and was not entitled to recover the subject debts." Given these circumstances, the Meneses Parties alleged "that Salander engaged in deceptive and/or unconscionable acts in violation" of the UCSPA.

¶5      On summary judgment, the district court ruled that the undisputed facts established that Salander (1) did "not conduct a collection agency, collection bureau, or collection office in this state"; (2) did "not engage in this state in the business of soliciting the right to collect or receive payment for another of any account, bill, or other indebtedness"; and (3) did "not advertise for or solicit in print the right to collect or receive payment for another of any account, bill, or other indebtedness within the meaning of [s]ection 12-1-1." Given that Salander did not engage in any of these three categories of activity, the court concluded that "Salander was not required to register and file a bond pursuant to the UCAA prior to filing suit against" the Meneses Parties. And because the Meneses Parties' claims were "based entirely on Salander's alleged noncompliance with" the UCAA, they failed "as a matter of law."

¶6      The district court also ruled that even if Salander had violated the requirements of section 12-1-1, the Meneses Parties' claims would "still fail and must be dismissed" because "[a]n alleged violation of the UCAA, with nothing more," does not support a cause of action under the UCSPA "or a claim under common law." The court stated that the Meneses Parties had improperly "attempt[ed] to shoehorn a violation of the UCAA, which only has criminal penalties" and does not provide a cause of action, "into either a violation of the UCSPA or [some] other State law cause of action." Put succinctly, the court concluded that

the Meneses Parties "must establish more than *a registration* violation of the UCAA to have a claim under the UCSPA."

ISSUES AND STANDARD OF REVIEW

¶7 The Meneses Parties argue that the district court erred in granting summary judgment in favor of Salander when it determined that Salander was not required to register under the UCAA. The Meneses Parties also maintain that the district court erred in granting summary judgment on the alternative ground that a violation of the UCAA, standing alone, could not support UCSPA and common law claims. Whether a district court properly grants summary judgment is a conclusion of law reviewed for correctness. *See Viertel v. Body Firm Aerobics LLC*, 2022 UT App 96, ¶ 9, 516 P.3d 791.

ANALYSIS

I. Whether Salander Was Bound by the Registration Requirement

¶8 The UCAA's registration requirement (with our bracketing) provided as follows:

No person shall

[1] conduct a collection agency, collection bureau, or collection office in this state, or

[2] engage in this state in the business of soliciting the right to collect or receive payment for another of any account, bill, or other indebtedness, or

[3] advertise for or solicit in print the right to collect or receive payment for another of any account, bill, or other indebtedness,

unless at the time

> [a] of conducting the collection agency, collection bureau, collection office, or collection business, or
>
> [b] of advertising or soliciting,

that person or the person for whom he may be acting as agent, is registered with the Division of Corporations and Commercial Code and has on file a good and sufficient bond as hereinafter specified.

Utah Code § 12-1-1 (2022).

¶9　The Meneses Parties rely on *Lawrence v. First Financial Investment Fund V, LLC*, 444 F. Supp. 3d 1313 (D. Utah 2020), to support the position that Salander was bound by the UCAA's registration requirement, even though Salander was recovering the debt it owned for its own benefit. Observing that the legislature had not defined "collection office," the *Lawrence* court consulted "dictionaries to assess [the] ordinary meaning" of the term. *Id.* at 1320–21 ("None of the disputed terms are terms of art, so the court must turn to other sources, primarily dictionaries, to derive the relevant terms' meanings."). After conducting a survey of dictionary definitions, the *Lawrence* court concluded that a debt purchaser's "activities fit squarely within the definition of 'collection office.' Indeed, the purchasing and collection of debt is [a debt purchaser's] *raison d'être*. . . . That [a debt purchaser] collects debts for its own account does not obviously place it outside [section 12-1-1's] reach." *Id.* at 1323; *see also id.* at 1328 ("The court concludes [a debt buyer's] business of buying debt originated by someone else and then collecting on that debt brings it within the Statute's ambit.").[2]

---

2. Other Utah federal cases have relied on *Lawrence*'s conclusion. *See Chamberlain v. Crown Asset Mgmt.*, 608 F. Supp. 3d 1091, 1100,

(continued…)

¶10 But the statute is open to multiple interpretations. *See id.* at 1328 (noting that section 12-1-1 left "room for disagreement about the contours" of its meaning); *see also Holmes v. Crown Asset Mgmt., LLC*, No. 2:19-cv-00758, 2021 WL 3473050, at *4 (D. Utah Aug. 6, 2021) (concluding that "[a]bsent clearer statutory language," a debt buyer "could have reasonably believed that the UCAA could not properly be construed to limit" its ability to file suit in state court to collect on the debt it owned). Most notably, a reading of the wider statutory scheme of the UCAA suggests that its purpose was not to protect the interests of those who owed a debt but to protect the interests of those to whom the debt was owed, which supports the position that the registration requirement applied only to those who collect debt on behalf of others. For example, the UCAA identified the purpose of obtaining the bond mentioned in section 12-1-1 as being not for the benefit of debtors but "to protect the persons for whom the collection is undertaken." Utah Code § 12-1-2(2) (2022); *see also id.* § 12-1-8 (stating that the collector could bring suit "at the direction" of the debt originator to recover the debt). From this perspective, the registration and bonding requirement would appear to have applied to only traditional debt collectors (i.e., those who collect debt owed to a third party) rather than to a party like Salander, which buys debts and attempts to directly recover the amounts owed for itself.

¶11 But we do not need to decide, in the context of this case, whether we think *Lawrence* was correctly decided. We will assume

---

1104 (D. Utah 2022); *Cotte v. CVI SGP Acquisition Trust*, No. 2:21-cv-00299-JNP-DAO, 2022 WL 464307, at *2 (D. Utah Feb. 15, 2022). In another case, the federal district court determined that section 12-1-1 applied to a "collection agency" that purchased "debts from various lending agencies." *Buhler v. BCG Equities, LLC*, No. 2:19-cv-00814-DAK, 2020 WL 888733, at *1–2 (D. Utah Feb. 24, 2020).

without deciding that the registration requirement applied to companies whose business is to buy and recover debt.[3]

### II. Whether a UCAA Registration Violation Provides an Independent Basis for a Cause of Action Under the UCSPA or Common Law

¶12    Even if the registration requirement applied to Salander, the Meneses Parties still must show that a violation of this requirement supports a cause of action under either the UCSPA or common law. We are not persuaded they have done so.

¶13    The UCAA carried only a criminal penalty for debt collectors who failed to comply with its registration and bonding requirement: "Any person, member of a partnership, or officer of any association or corporation who fails to comply with any provision of this title is guilty of a class A misdemeanor." Utah Code § 12-1-6 (2022).

¶14    Noting the lack of a private right of action in the UCAA, the district court concluded that "[e]ven if Salander was required to register and file a bond pursuant to the UCAA, . . . all of [the Meneses Parties'] claims still fail and must be dismissed." It went on to explain that an "alleged violation of the UCAA, with

---

3. Salander also argues that the UCAA registration requirement applied only to businesses that have a physical location in Utah. We do not share this view. It would make little sense to say that a collection agency could free itself of the registration and bonding requirements imposed by the UCAA simply by locating its office a few feet over the border in, say, Nevada and then conducting all of its business in Utah. Under the plain meaning of the statute, a collection agency could certainly "conduct" a collection business in Utah without having an office in the state. *See* Utah Code § 12-1-1 (2022). And with the act of so "conducting" its business in Utah, the collection business would accordingly be governed by the UCAA. *See id.*

nothing more, does not provide" the basis for a cause of action or a claim under common law, concluding that the Meneses Parties "may not attempt to shoehorn a violation of the UCAA . . . into either a violation of the UCSPA or any other State law cause of action, including a cause of action for unjust enrichment or intrusion upon seclusion."

¶15    To fill this apparent lacuna, the Meneses Parties assert their claims were not brought under the UCAA. Instead, they argue that the *criminal act* associated with the violation of the UCAA, *see id.*, not the UCAA itself, supports civil liability. More specifically, the Meneses Parties argue that "unlawful debt collection has routinely been found to be deceptive and unconscionable" under the UCSPA. They assert that "[e]ven if a statute does not provide members of the public a direct enforcement mechanism, the statutory violation can still substantiate an independent claim under common law, equity, or a statute that does provide" a cause of action. Thus, the Meneses Parties argue that "[w]hether the UCAA contains a private cause of action is irrelevant here because [they] do not allege a claim under the UCAA. . . . Rather, [they] rely on the UCAA violation, in part, to establish independent claims for unjust enrichment [and] intrusion upon seclusion . . . under the UCSPA." In support of this position, the Meneses Parties assert that statutory violations routinely serve "as evidence of negligence," such as when "traffic law violations . . . support . . . negligence claims related to auto accidents." Moreover, the Meneses Parties argue that the Division of Consumer Protection—which is identified as the "[e]nforcing authority" for the UCSPA, *see* Utah Code §§ 13-11-3(3), -17(4)(a)— has determined that "[i]t shall be a deceptive act or practice in connection with a consumer transaction . . . for a supplier to . . . [m]isrepresent that the supplier has the particular license, bond, insurance, qualifications, or expertise that is related to the work to be performed," Utah Admin. Code R152-11-5(B)(5).

¶16    We are unpersuaded by this reasoning. In spite of the Meneses Parties' assertion that their claims do not sound in the

UCAA, the only violation they identify Salander as having committed is failing to register and bond under the UCAA. But a UCAA violation is not enough to support a cause of action under the UCSPA or the common law doctrines they invoke. "To hold that [a debt buyer's] failure to disclose its unregistered status to [debtors] is alone enough to constitute a UCSPA violation would have the same effect as transforming a violation of the UCAA" into a cause of action. *Buhler v. BCG Equities, LLC*, No. 2:19-cv-00814-DAK, 2020 WL 888733, at *5 (D. Utah Feb. 24, 2020). "Such a holding would not require a [debtor] to allege anything beyond a violation of the UCAA's registration provision." *Id.*

¶17 We acknowledge that UCAA noncompliance could theoretically be part of the basis for a claim under the UCSPA or common law. *See id.* ("Indeed, it may be a violation of the UCSPA if a debt collector affirmatively misrepresented its registration status or evidence is presented that an agency concealed its registration status with knowledge or intent to deceive a debtor."). But even if a debt collector's misrepresentation regarding its UCAA registration status could—in an appropriate case—constitute a violation of the UCSPA, the Meneses Parties have failed to demonstrate such a violation here. While the Meneses Parties repeatedly alleged in their complaint before the district court that "Salander misrepresented its licensure status to debtors," they failed to plead any facts to support this allegation. The only improper actions that the Meneses Parties identify in their factual pleadings—actions Salander does not dispute—is that Salander engaged in the "business of collecting debts acquired in default and filed collection lawsuits in Utah courts" without first having obtained "the mandatory license required by Utah law" pursuant to section 12-1-1. Similarly, the Meneses Parties' claim of unjust enrichment was based on Salander's failure "to obtain a license to act as a collection agency." And the intrusion upon seclusion claims were also based on Salander's failure to obtain a license. No other act of wrongdoing on the part of Salander is asserted in the complaint or, more importantly, in

the factual statement filed in opposition to Salander's summary judgment motion. Put simply, the Meneses Parties allege that Salander's only wrong act was its failure to comply with the UCAA's registration requirement, not that Salander misrepresented this status to them or that they were somehow harmed by any such misrepresentation.[4]

¶18　But a UCAA registration violation, standing alone, is—as the district court correctly concluded—not enough. To support a cause of action under the UCSPA or common law, the Meneses Parties needed to claim something more, such as an affirmative misrepresentation. But that is not what Salander purportedly did here.

¶19　The Meneses Parties never claim that Salander made any affirmative statements about its registration and bonding status under section 12-1-1. They have presented no factual claims that Salander ever affirmatively represented that it was operating as a collection agency and was accordingly bound by the UCAA's registration requirement. As the Meneses Parties argued below, Salander did represent that it had "the same right to collect on

---

4. In their brief on appeal, the Meneses Parties claim Salander "violated the UCSPA through false and misleading misrepresentation and omissions concerning its failure to register and post a bond." And they contend that "unlicensed debt collection, which inherently misrepresents the collector's ability to lawfully enforce the debt, is deceptive and unconscionable." Further, they argue that "criminal acts," like a misdemeanor for not complying with the UCAA, are "deceptive and unconscionable." They assert that by filing debt collection actions, "Salander implicitly represented it was entitled to collect the debt," which was false and therefore deceptive because it could not legally do so given its violation of the UCAA. But in the end, the Meneses Parties do not carry their burden of persuasion on appeal with respect to any of these precepts.

[purchased] debt as the original creditor."[5] But Salander's representation that it had the right to collect on a debt it owned is not the same as Salander representing that it was a debt collector operating in full compliance with the laws of Utah. Indeed, Salander—not knowing (given the UCAA's ambiguity on the point) that it was required to register and bond—could hardly be said to have withheld its registration status since there was no information for Salander to withhold from the Meneses Parties.[6]

¶20    By the Meneses Parties' own estimation—namely, that Salander told debtors that it had the "same right . . . as the original creditor" to recover debt it owned—Salander represented that it was the legitimate holder of debt and was collecting on the debt in its own name, not necessarily that it was a debt collector operating in compliance with Utah law. Without something beyond a mere violation of the UCAA, the Meneses Parties simply do not have a cause of action available to them. Federal courts considering this question have consistently come to the same conclusion. *See, e.g.*, *Buhler*, 2020 WL 888733, at *5 ("[A] debt collector must engage in unfair or misleading conduct *beyond what the UCAA prohibits* to support a finding that a collection agency also violated the UCSPA." (emphasis added)); *Gunther v. Midland*

---

5. The Meneses Parties argued that this statement amounted to an "affirmative misrepresentation" because, they argue, Salander "did not have the same right to collect" the debt it purchased when it "had no right to collect the debt in Utah." We see the statement differently. It is difficult to characterize it as an "affirmative misrepresentation" when the applicability of section 12-1-1 to third-party debt buyers was open to question. *See supra* ¶ 10.

6. This same reasoning applies to the Meneses Parties' common law claims: a violation of the UCAA, standing alone, does not provide support for the Meneses Parties' common law causes of action.

*Credit Mgmt., Inc.*, No. 2:17-cv-704, 2018 WL 4621764, at *9 (D. Utah Sept. 26, 2018) (rejecting an argument that "the unlawful collection of debts under the UCAA results in a violation of the UCSPA since it bars unfair or deceptive practices . . . because the court cannot transform a (purported) violation" of the UCAA into a cause of action under the UCSPA (cleaned up)).

¶21    In sum, the Meneses Parties have not alleged Salander did anything wrong apart from violating the UCAA's registration requirement. Without some other affirmative misrepresentation or attempt to conceal its registration status on the part of Salander, saying that a UCAA violation is enough to support a UCSPA or common law claim is an improper attempt to "transform[] a violation of the UCAA" into a cause of action. *See Buhler*, 2020 WL 888733, at *5. Thus, the Meneses Parties have failed to support their claim that Salander's violation of the UCAA's registration requirement is sufficient to sustain a cause of action under the UCSPA or common law. Accordingly, we conclude that the district court properly dismissed their claims on summary judgment under the alternative ground it identified.

CONCLUSION

¶22    Even assuming that Salander was bound by the UCAA's registration requirement, its failure to comply with that requirement does not, without more, support a cause of action under the UCSPA or common law. Accordingly, we affirm the district court's grant of summary judgment.

———————