2024 UT App 4

# THE UTAH COURT OF APPEALS

AMANDA PACE AND KANDILEE SAUTER,
Appellants,
*v.*
LINK DEBT RECOVERY LLC,
Appellee.

Opinion
No. 20220841-CA
Filed January 5, 2024

Third District Court, West Jordan Department
The Honorable Matthew Bates
No. 210905743

Daniel Baczynski, Attorney for Appellants

Mark A. Nickel, Attorney for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES RYAN D. TENNEY and AMY J. OLIVER concurred.

HARRIS, Judge:

¶1      In 2020, Link Debt Recovery LLC (Link) initiated separate debt collection lawsuits against Amanda Pace and Kandilee Sauter (collectively, the Pace Parties). In the complaints it filed, Link asserted, among other things, that it was "operating pursuant to the laws of the State of Utah." Link prevailed in both lawsuits, eventually obtaining judgments against the Pace Parties.

¶2      Later, the Pace Parties filed the instant lawsuit against Link, alleging that, at the time Link filed the collection lawsuits against them, Link was not properly registered and bonded as a debt collector as required by then-applicable Utah law. The Pace Parties asserted that Link's actions—attempting to sue them for collection while not properly registered and bonded—were unlawful under Utah and federal consumer protection statutes.

Link asked the district court to dismiss the Pace Parties' lawsuit, asserting that it was in fact properly registered and bonded and, alternatively, that even if it were not, its actions did not amount to unlawful activity under the relevant statutes.

¶3 The district court granted Link's motion to dismiss on both grounds, and the Pace Parties now appeal that determination. They assert that factual questions exist regarding Link's true registration status that may not properly be resolved on a motion to dismiss, and that Link made an affirmative misrepresentation in its complaint—that it was "operating pursuant to the laws of the State of Utah"—that is potentially actionable under the relevant consumer protection statutes. We agree with the Pace Parties that the court erred in dismissing their lawsuit at this procedural stage, and we therefore reverse the court's dismissal order and remand the case for further proceedings.

BACKGROUND[1]

¶4 In February 2020, Link filed a debt collection lawsuit against Sauter. In November 2020, Link filed a similar lawsuit against Pace. In both complaints, Link asserted, as one of its "general allegations," that it was "a duly organized and existing business operating pursuant to the laws of the State of Utah." Link also claimed that Sauter and Pace had each failed to pay a debt—Sauter had failed to pay $1,938.58 and Pace had failed to pay $1,778.00—and that Link had acquired, by assignment, the right to collect on those unpaid debts. The Pace Parties did not respond

---

1. "On appeal from a motion to dismiss, we review the facts only as they are alleged in the complaint. We accept the factual allegations as true and draw all reasonable inferences from those facts in a light most favorable to the plaintiff." *Haynes v. Department of Public Safety*, 2020 UT App 19, n.2, 460 P.3d 565 (quotation simplified).

to the lawsuits, and Link was therefore able to obtain default judgments against them.

¶5     The next year, in October 2021, the Pace Parties filed the instant lawsuit against Link. In that lawsuit, the Pace Parties did not contest their liability for the underlying debts. Instead, they pointed out that, at the time Link filed its collection lawsuits against them, Utah law required debt collectors to be registered with the state and have filed a bond with the state, and they alleged that Link was not properly registered and bonded. They further alleged that they chose "not to respond to" the collection lawsuits because they believed—based on Link's representation that it was "operating pursuant to the laws of the State of Utah"— that Link had "the legal right to sue" on the debts in question. And they asserted that Link's actions were unlawful under both a federal consumer protection statute—the Fair Debt Collection Practices Act (FDCPA), *see* 15 U.S.C. §§ 1692e, 1692f—and a similar Utah statute—the Utah Consumer Sales Practices Act (UCSPA), *see* Utah Code § 13-11-2.

¶6     Instead of answering the Pace Parties' lawsuit, Link filed a motion to dismiss, asking the court to dismiss the suit on two alternative grounds.[2] First, Link asserted that it actually *was*

_____

2. In its motion, Link listed several additional grounds upon which it believed the Pace Parties' lawsuit should be dismissed, in whole or in part. The district court, in its ruling granting Link's motion, relied only on the two grounds we discuss here, and made no ruling on any of the other grounds Link asserted. In this appeal, Link invites us to affirm the dismissal of the Pace Parties' complaint on several grounds, including the additional grounds listed in its motion and which the district court did not consider. We decline Link's invitation to affirm on any of these other grounds that were not considered by the district court in the first instance, and we reach no decision on the merits of any of them.

(continued…)

properly registered in 2020, when it filed the collection lawsuits. Second, Link asserted that, even if it wasn't properly registered, its actions in attempting to collect the debt were not actionable under the relevant statutes in any event.

¶7    In connection with its first argument, Link acknowledged that it was not separately registered and bonded as a debt collector, as required by then-current Utah law. However, it contended that, in August 2019, before the collection lawsuits were filed, it had changed its corporate status from an "LLC" to a "dba," and that the entity under which the "dba" did business— a company known as Collection Professionals, Inc. (CPI)—*was* properly registered and bonded. It acknowledged that, in the complaints filed in the collection lawsuits, it had purported to be an "LLC," but it claimed that this had been a "scrivener's error" and that its true corporate status, as demonstrated by corporate filing documents it attached to its motion, was a "dba" for CPI, a properly registered and bonded company.

¶8    The Pace Parties' response to this, as expressed in their memorandum opposing Link's motion to dismiss, was that Link was not telling the court the entire corporate story. They pointed out that, in late January 2020, about a week before it sued Sauter, Link changed its corporate status back to an LLC. Accordingly, at the time it filed both collection lawsuits, Link was not a dba of CPI, but instead was an independent LLC that was not registered and bonded as a debt collector.

¶9    Link's response to this, as expressed for the first time in a reply memorandum in support of its motion, was that it had

_____

*See Siebach v. Brigham Young Univ.*, 2015 UT App 253, ¶ 36, 361 P.3d 130 ("Although we possess the ability to affirm on any legal ground or theory apparent on the record, we also possess the discretion to conclude that the district court should be afforded the opportunity to rule on the arguments in the first instance.").

filed—on November 10, 2021, just weeks after being sued by the Pace Parties for being an unregistered debt collector, and just weeks before filing its motion to dismiss—a "Statement of Correction" (the Correction) with the state indicating that the January 2020 document converting Link back to an LLC had been "filed in error." It asserted that this Correction operated to retroactively void the earlier-filed conversion document, and that Link had therefore been a dba of CPI—and not an independent LLC—at all times after August 2019.

¶10    At oral argument on the motion, the district court gave the Pace Parties an opportunity to respond to Link's arguments—made for the first time in reply—regarding the Correction. The Pace Parties did not contest that the Correction had been duly filed in November 2021, but they argued that discovery was necessary to determine whether there had truly been an "error" in the January 2020 filing, or whether the Correction was merely a sham document, created just weeks after being sued, that had "been filed so that [Link could] avoid liability."

¶11    At the conclusion of the oral argument, the court took the matter under advisement, and it later issued a written ruling granting Link's motion to dismiss. First, the court determined that the corporate filings—most notably, the Correction—established that Link was a dba of CPI at all relevant times and was therefore properly registered and bonded as a debt collector. Second, and alternatively, the court ruled that, even if Link had not been properly registered and bonded, its conduct was not actionable under the consumer protection statutes as a matter of law, concluding that the Pace Parties "cannot make out a violation of the UCSPA or the FDCPA merely by alleging a violation of" Utah's registration and bonding requirements. The court later entered judgment in favor of Link.

ISSUE AND STANDARD OF REVIEW

¶12    The Pace Parties now appeal the court's order dismissing their lawsuit. "We review a decision granting a motion to dismiss for correctness, granting no deference to the decision of the district court." *Haynes v. Department of Public Safety*, 2020 UT App 19, ¶ 5, 460 P.3d 565 (quotation simplified). As part of our review, we "must accept the material allegations of the complaint as true, and the [district] court's ruling should be affirmed only if it clearly appears the complainant can prove no set of facts in support of his or her claims." *Id.* (quotation simplified). "Our inquiry is concerned solely with the sufficiency of the pleadings, and not the underlying merits of the case." *Id.* (quotation simplified).

ANALYSIS

¶13    The district court offered two alternative grounds for dismissal of the Pace Parties' complaint, and the Pace Parties assert that neither ground can support dismissal, at least not at this procedural stage. We agree with the Pace Parties, and we discuss each ground in turn.

I. Link's Corporate/Registration Status

¶14    As its first reason for dismissing the Pace Parties' complaint, the district court determined—after reviewing Link's corporate filing documents—that Link had been a dba of CPI at all relevant times, and that Link was therefore properly registered and bonded as a debt collector when it filed collection lawsuits against the Pace Parties. In challenging this ruling, the Pace Parties acknowledge the corporate filings, and do not take issue with the court's decision to take judicial notice of them. But they assert that, due to its "suspicious timing," the Correction "is not dispositive" and may well be "a legal fiction." And they assert

that they are entitled to engage in the discovery process to test this theory. We agree.

¶15 The Utah Collection Agency Act (UCAA) states that no "person shall conduct a collection agency, collection bureau, or collection office in this state, or engage in this state in the business of soliciting the right to collect or receive payment for another of any account, bill, or other indebtedness," unless that person "is registered with the Division of Corporations and Commercial Code and has on file a good and sufficient bond." Utah Code § 12-1-1 (2022).[3] In other words, the UCAA requires any person[4] involved in debt collection to be properly registered and bonded with the state. And the required bond is "for the sum of $10,000, payable to the state of Utah." *Id.* § 12-1-2(1). A person who fails to abide by this section "is guilty of a class A misdemeanor," *id.* § 12-1-6, and thus subject to criminal penalties up to and including 364 days in jail, *see id.* § 76-3-204. But the UCAA—as discussed more fully below—includes no private right of action allowing citizens to sue for violation of it. *See id.* §§ 12-1-1 to -11.

¶16 In their complaint, the Pace Parties claim that, during the relevant time period, Link was not properly registered and

_____

3. "With the exception of its final section—authorizing creditors to recover collection fees in addition to other amounts owed by a debtor—the UCAA was recently repealed by the Utah Legislature." *Meneses v. Salander Enters. LLC*, 2023 UT App 117, ¶ 3 n.1, 537 P.3d 643; *see also* Act of May 3, 2023, ch. 32, § 3, 65th Leg., Gen. Sess.; Act of May 3, 2023, ch. 213, § 1, 65th Leg., Gen. Sess. It was, however, in effect at all times relevant to this case, and the parties agree that it applies here.

4. The UCAA contains no statutory definition of "person." *See* Utah Code §§ 12-1-1 to -11 (2022). We assume, for purposes of our analysis, that "person" includes business entities; no party to this appeal makes any argument to the contrary.

bonded as a debt collector in Utah. In the motion to dismiss it filed in response to the complaint, Link did not contend that it was ever separately registered and bonded as such. Instead, Link asserted that, at the time it filed the collection lawsuits against the Pace Parties, it was a "dba" of CPI, which *was* a properly registered and bonded entity. If this assertion turns out to be true, then Link cannot be said to have been in violation of the UCAA's registration and bonding requirements at the time it sued the Pace Parties, and the Pace Parties' lawsuit would therefore fail.

¶17 When evaluating the facts in the context of a motion to dismiss, we must ordinarily assume that the plaintiff's allegations are true. *See Nielsen v. LeBaron*, 2023 UT App 29, ¶ 11, 527 P.3d 1133 ("A motion to dismiss should be granted only if, assuming the truth of the allegations in the complaint and drawing all reasonable inferences therefrom in the light most favorable to the plaintiff, it is clear that the plaintiff is not entitled to relief." (quotation simplified)), *cert. denied*, 534 P.3d 751 (Utah 2023). Here, the Pace Parties assert, in their complaint, that Link was operating as a standalone LLC at the time it filed the collection lawsuits, and that it was not properly registered and bonded. In the typical situation, this allegation would be the end of it, at the motion to dismiss stage, because the court must assume this allegation to be true.

¶18 In this case, however, both sides attached to their motion-to-dismiss memoranda certain corporate records pertaining to Link, and both sides asked the district court to consider those records in evaluating this issue as presented by Link's motion to dismiss. *See BMBT, LLC v. Miller*, 2014 UT App 64, ¶ 6, 322 P.3d 1172 ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss." (quotation simplified)). And on appeal, no party asserts that the district court improperly considered those records. We therefore assume, for purposes of our analysis and without deciding, that the court properly considered Link's corporate records in this context

without converting the motion to dismiss to a motion for summary judgment. *See generally* Utah R. Civ. P. 12(c) (stating that, if "matters outside the pleading are presented to and not excluded by the court, the motion [to dismiss] must be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties must be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56").

¶19   After reviewing those records, the district court concluded—based on the Correction—that Link was, at all relevant times, a dba of CPI and not a standalone LLC, and therefore concluded that Link was properly registered and bonded as required by the UCAA. The Pace Parties challenge this conclusion, asserting that factual questions remain regarding whether the Correction was properly filed under applicable law.

¶20   Under Utah law, a company may "correct" a filed corporate record under certain circumstances. *See* Utah Code § 48-3a-208. As relevant here, a company may correct a record if the record was "inaccurate" at the time it was filed. *See id.* § 48-3a-208(1)(a); *see also* Uniform Limited Liability Company Act, § 209 cmt. subsection (a)(1) and (2) (Unif. L. Comm'n 2013) ("A filed record may be corrected *because it contains an inaccuracy . . . .*" (emphasis added)). If the requirements of the statute are met, then "[a] statement of correction is effective as of the effective date of the filed record that it corrects," except "as to persons relying on the uncorrected filed record and adversely affected by the correction." Utah Code § 48-3a-208(4). The Pace Parties do not contend that they relied on the January 2020 conversion document.[5] So, as applied here, this statute means that the

---

5. The district court stated that the Pace Parties' "[c]omplaint makes no assertion that [the Pace Parties] were aware in any way at all of [Link's] legal status at the time of its collection efforts," nor does it "make any allegation that [the Pace Parties] took any

(continued…)

Correction must be considered valid, as against the Pace Parties, if the January 2020 conversion document—the record being corrected—was in fact "inaccurate" at the time it was filed.

¶21    Link certainly asserts that the 2020 conversion document was "mistakenly filed." Indeed, on its face, the Correction proclaims that the 2020 conversion document "was filed in error." But the Pace Parties take issue with this characterization; they assert that "the belatedly filed (and self-serving)" Correction "is a legal fiction," generated not because there was actually any inaccuracy in the conversion document but, instead, as a ruse to "avoid liability" to the Pace Parties in this lawsuit. The Pace Parties assert that this question—whether the 2020 conversion document was truly inaccurate—is a factual one that cannot be resolved against them at this procedural stage, and that they "are entitled to test their allegations through discovery." We agree.

¶22    Whether the January 2020 conversion document was in fact inaccurate is indeed a fact-bound question that will likely depend, at least to some extent, on Link's intentions when it filed both that document as well as the Correction. Such questions are typically treated as questions of fact. *See O'Hair v. Kounalis*, 463 P.2d 799, 801 (Utah 1970) ("In most cases the question of intention is a question of fact for determination by the fact-finder . . . ."); *see also Wolf Mountain Resorts, LC v. ASC Utah, Inc.*, 2011 UT App 425, ¶ 10, 268 P.3d 872 ("Determining the parties' intent in drafting a contract presents a question of fact."); *Aris Vision Inst., Inc. v.*

---

action or refrained from taking any action in reliance on the January 2020 conversion." On appeal, the Pace Parties do not challenge the court's conclusion in this regard. Moreover, our own examination of both their complaint and their memorandum opposing Link's motion to dismiss reveals no indication that, prior to the litigation regarding the motion to dismiss, the Pace Parties claim to have even known about—let alone relied upon—the 2020 conversion document.

*Wasatch Prop. Mgmt., Inc.*, 2005 UT App 326, ¶ 15, 121 P.3d 24 (stating that "[t]he determination of intent is a question of fact" in evaluating whether a person abandoned property), *aff'd*, 2006 UT 45, 143 P.3d 278. In our view, the Pace Parties have raised legitimate concerns about whether there was in fact any inaccuracy in the 2020 conversion document. We agree with the Pace Parties that, at this procedural stage, reasonable inferences from the alleged facts—as well as from documents judicially noticed—must be drawn in their favor. *See Calsert v. Estate of Flores*, 2020 UT App 102, ¶¶ 13–14, 470 P.3d 464 (stating that in the rule 12(b)(6) context, "[e]ven if [the district court] could have properly taken notice of" public documents, it "was still required to assume the truth of [the plaintiff's] allegations" and interpret the documents in the light most favorable to the plaintiff's claims). Here, the Pace Parties point to reasonable inferences—drawn from the timing of the filings and from the documents themselves, which do not appear facially inaccurate—indicating that Link filed the Correction not to remedy any inaccuracy but, instead, to sidestep liability to the Pace Parties in this lawsuit.

¶23   Accordingly, the district court erred by resolving this factual conundrum in Link's favor in the context of Link's motion to dismiss. On this question, the Pace Parties are entitled to proceed to discovery to explore whether the January 2020 conversion was "inaccurate" at the time of filing.

## II. The Merits of the Statutory Claims

¶24   Because we are not able to affirm the district court's dismissal order on the first ground it discussed, we must proceed to analyze the court's alternative basis for dismissal: that even if Link was *not* properly registered and bonded under Utah law, the Pace Parties' complaint is nevertheless subject to dismissal because they "cannot make out a violation of the UCSPA or FDCPA merely by alleging a violation of the UCAA." The district court's statement is correct, as far as it goes, at least as concerns

claims under the UCSPA. *See Fell v. Alco Cap. Group LLC*, 2023 UT App 127, ¶ 37, 538 P.3d 1249 (stating that, "without some showing of an affirmative misrepresentation," a "violation of the UCAA [does] not constitute a violation of the UCSPA"), *petition for cert. filed*, Dec. 20, 2023 (No. 20231126); *Meneses v. Salander Enters. LLC*, 2023 UT App 117, ¶ 18, 537 P.3d 643 (stating that "a UCAA registration violation, standing alone, is . . . not enough" to "support a cause of action under the UCSPA or common law"), *petition for cert. filed*, Nov. 29, 2023 (No. 20231068). But the Pace Parties assert that they have alleged more here than merely a UCAA registration violation: as they see it, they have alleged the sort of "affirmative misrepresentation" about licensure status that would, if true, state a claim under the UCSPA and the FDCPA. We agree with the Pace Parties.

## A. The UCSPA

¶25    The UCSPA forbids "deceptive act[s] or practice[s] by a supplier in connection with a consumer transaction." Utah Code § 13-11-4(1); *see also Fell*, 2023 UT App 127, ¶ 26 (stating that the UCSPA "'shall be construed liberally to promote,' among other things, the protection of 'consumers from suppliers who commit deceptive and unconscionable sales practices'" (quoting Utah Code § 13-11-2(2))). While the text of the UCSPA does not specifically discuss misrepresentations of registration and bonding status, applicable regulations provide that "[i]t shall be a deceptive act or practice" to "[m]isrepresent that the supplier has the particular license, bond, insurance, qualifications, or expertise that is related to the work to be performed." Utah Admin. Code R152-11-5(b)(5). The Pace Parties correctly assert that a debt collector who makes an affirmative misrepresentation about its registration and bonding status may have committed a deceptive act that is actionable under the UCSPA. *See Fell*, 2023 UT App 127, ¶ 37; *see also Meneses*, 2023 UT App 117, ¶¶ 18–19. And they assert that their allegation here—that Link stated, inaccurately, that it was "a duly organized and existing business operating pursuant

to the laws of the State of Utah"—is sufficient to state a claim under the UCSPA. They point out that we must assume the truth of this allegation and draw all reasonable inferences about that allegation in their favor. After doing so, we agree with the Pace Parties that the district court erred by dismissing their UCSPA claim, at least at this procedural stage.

¶26　As noted above, the UCAA does not contain a private right of action; instead, it prescribes criminal liability for violations of its terms. *See* Utah Code § 12-1-6 (2022). As a result, we have held that "a UCAA violation is not enough to support a cause of action under the UCSPA," because the opposite rule would "have the same effect as transforming a violation of the UCAA into a [private] cause of action." *Meneses*, 2023 UT App 117, ¶ 16 (quotation simplified). Accordingly, in order to state a viable claim against a debt collector under the UCSPA, a plaintiff must "claim something more" than a plain violation of the UCAA. *Id.* ¶ 18. And we have identified "an affirmative misrepresentation" as something that could, in appropriate cases, give rise to a valid claim under the UCSPA. *Id.*; *see also Fell*, 2023 UT App 127, ¶ 37.

¶27　Indeed, we have offered recent guidance, in the specific context of UCAA registration violations, about the type of misrepresentation that may suffice to state a valid claim under the UCSPA. We have noted that a plaintiff must allege more than "mere silence" on the part of the debt collector "about its licensure," and instead must demonstrate an "intent to mislead," something that could be evidenced by an "affirmative misrepresentation" about its registration status. *See Fell*, 2023 UT App 127, ¶¶ 32, 37; *see also Meneses*, 2023 UT App 117, ¶ 18.[6] In

_____

6. Both *Meneses* and *Fell* were published after the parties in this case had submitted their briefs. Because we recognized that these cases may have some application here, we asked the parties for "simultaneously filed supplemental briefs" on "[w]hether some (continued…)

*Fell*, we held that the plaintiffs had not sufficiently alleged an affirmative misrepresentation, where the debt collector simply stated, in its collection complaints, that it had the "same right to collect" as the prior debt holder and that it was "entitled to a judgment." *See* 2023 UT App 127, ¶¶ 3, 37. And in *Meneses*, we held that the plaintiffs had not sufficiently alleged a UCSPA violation when the debt collector's only asserted unlawful act was "its failure to comply with the UCAA's registration requirement." *See* 2023 UT App 117, ¶ 17.

¶28　But in *Meneses*, we suggested that the plaintiffs might have stated a valid cause of action under the UCSPA if the debt collector had "represent[ed] that it was a debt collector operating in full compliance with the laws of Utah." *See id.* ¶ 19. The Pace Parties rely heavily on this suggestion, and assert that the representation Link made here—that it was "a duly organized and existing business operating pursuant to the laws of the State of Utah"—is akin to the one we suggested, in *Meneses*, might suffice. The Pace Parties read Link's allegation about "operating pursuant to the laws of" Utah as a representation that it was in

---

or all of the issues in this appeal are controlled by" *Meneses* and *Fell*. The Pace Parties accepted our invitation, and timely supplied supplemental briefing. One day after the deadline for supplemental briefing had passed, Link filed an "Objection to Supplemental Briefing of Appellants," in which Link responded to the Pace Parties' supplemental briefing, and provided—as justification for its late filing—that it had not been "planning to provide any supplemental briefing on that issue, because [it] anticipated that [the Pace Parties] were properly motivated to accurately address it without Link's input." The Pace Parties moved to strike Link's untimely filed "objection." While we acknowledge the Pace Parties' concern with this late filing, consideration of Link's arguments does not affect our resolution of this appeal, so we deny the Pace Parties' motion to strike.

compliance with the UCAA's requirements. And they assert that there is little if any daylight between that representation and the one we referenced in *Meneses*: that the debt collector is "in full compliance with the laws of Utah." *Id.*

¶29    We agree with the Pace Parties that, at this procedural stage, dismissal of their UCSPA claim was premature. Link's statement might well have been entirely benign, intended to communicate simply that it was a Utah business entity created pursuant to the laws of that jurisdiction. But the Pace Parties' contrary interpretation of that statement is not unreasonable, especially given our instruction in *Meneses* that similar representations might be actionable, *see id.*, and given the reality that all reasonable inferences must be drawn in the Pace Parties' favor at this point, *see Brown v. Division of Water Rights of Dep't of Nat. Res.*, 2010 UT 14, ¶ 10, 228 P.3d 747. We caution, however, that in order to succeed on their UCSPA claim, the Pace Parties must demonstrate that Link's representation was "deceptive," *see* Utah Code § 13-11-4, a task that will require them to demonstrate that Link exhibited "intentional or knowing behavior," *see Martinez v. Best Buy Co.*, 2012 UT App 186, ¶ 4, 283 P.3d 521 (stating that "the plain language of the UCSPA specifically identifies intentional or knowing behavior as an element of a deceptive act or practice"), *cert. denied*, 293 P.3d 376 (Utah 2012). As applied here, this means that the Pace Parties will bear the burden of demonstrating that, when Link alleged that it was "a duly organized and existing business operating pursuant to the laws of the State of Utah," it was intentionally or knowingly misrepresenting that it was in compliance with the UCAA.

¶30    The Pace Parties may or may not be able to meet this burden when the time comes. But at this procedural stage, they have made allegations sufficient to survive Link's motion to dismiss. Accordingly, we reverse the court's dismissal of the Pace Parties' UCSPA claim.

## B. The FDCPA

¶31     The FDCPA forbids any "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e; *see also id.* § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."). In particular, the FDCPA classifies as "false, deceptive, and misleading"—and therefore forbids—"[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *see id.* § 1692e(10), as well as the making of any "threat to take any action that cannot legally be taken," *see id.* § 1692e(5).

¶32     In this appeal, no party asserts that the meaning of "false, deceptive, or misleading representation," as used in the FDCPA, *see id.* § 1692e, is materially different from the meaning of "affirmative misrepresentation," as used in *Meneses* and *Fell* in construing the UCSPA, *see Fell*, 2023 UT App 127, ¶¶ 33, 37; *Meneses*, 2023 UT App 117, ¶ 18. Rather, at least for purposes of this appeal, the parties seem to agree that a representation that gives rise to UCSPA liability would also give rise to liability under the FDCPA. *Cf.* Utah Code § 13-11-2(4) (stating that the UCSPA "shall be construed liberally to," in part, "make state regulation of consumer sales practices not inconsistent with the policies of the Federal Trade Commission Act relating to consumer protection" (quotation simplified)). Indeed, in the Pace Parties' principal brief, they assert that "both statutes prohibit the same practices within the debt collection context," at least regarding "deceptive and unconscionable acts." And Link does not dispute this allegation or make any attempt to distinguish the statutes' prohibitions.

¶33     Therefore, like the parties, we assume for purposes of our analysis that if Link's representation—that it was "a duly organized and existing business operating pursuant to the laws of the State of Utah"—could lead to UCSPA liability, then it can also

lead to FDCPA liability. Accordingly, we conclude that the district court improperly dismissed the Pace Parties' FDCPA claim at this procedural stage.

CONCLUSION

¶34 For the reasons explained, we conclude that the district court erred in dismissing the Pace Parties' claims at this procedural stage. The Pace Parties have raised a discoverable factual question about whether Link was properly registered and bonded at the time it filed the collection complaints. And Link made an affirmative representation that, when construed in the light most favorable to the Pace Parties, might give rise to liability under the UCSPA and the FDCPA. We offer no opinion as to the ultimate merits of the Pace Parties' claims; we determine only that they are sufficient to survive Link's motion to dismiss. We therefore reverse the district court's dismissal order and remand the case for further proceedings consistent with this opinion.

———————